# 14-2135

## UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

J. Robert Arbuthnot, Individually and on behalf of all others similarly situated, The City of Providence, Individually and on behalf of all others similarly situated,

Plaintiff - Appellee,

v.

Donald Robert Pierson, II,

Objector - Appellant,

Aeropostale, Inc., Thomas P. Johnson, Marc D. Miller,
Defendants - Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF APPELLANT DONALD ROBERT PIERSON II

Joseph Darrell Palmer
Law Offices of Darrell Palmer PC
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Phone: (858) 215-4064 / Fax: (866) 583-8115
darrell.palmer@palmerlegalteam.com

Attorney for Appellant Donald Robert Pierson II

# TABLE OF CONTENTS

I.     JURISDICTIONAL STATEMENT …………………………… 1

II.    STATEMENT OF ISSUES …………………………………  1

III.   STANDARD OF REVIEW …………………………………  2

IV.    STATEMENT OF THE CASE ………………………………… 3

V.     STATEMENT OF FACTS …………………………………  4

    A. The Litigation ……………………………………………  4
    B. The Settlement ……………………………………………  7
    C. Pierson Objects; The Court Approves the Settlement ……………  7

VI.    ARGUMENT ………………………………………………… 8

    A.    The district court erred in approving a Settlement where
        class members were not provided adequate notice …………… 8

        1. Documents necessary to a review of the fairness of the
           Settlement and Attorneys' fees were not made available
           to class members ………………………………………… 9

        2. Notice of the Attorneys' Fee Motion was not directed
           to Class Members as required by Fed. R. Civ. Proc. 23 (h) …… 13

    B.    The award of attorneys' fees of 33% of the Settlement was
        excessive, and premised on an insufficient factual findings …… 18

        1. The court erred in assessing the adequacy of the settlement
           and accordingly overvalued the benefits obtained for the
           class ……………………………………………………… 18

        2. The court erred in approving an attorney fee award where
           counsel submitted inflated and presumptively unreasonable
           hourly rates for document review ……………………… 23

        3. In light of inadequate damages assessment and misleading
           and inadequate lodestar information, the court abused its
           discretion in awarding attorneys' fees of 33 1/3 percent
           of the total Settlement Fund ………………………………… 27

VII.  CONCLUSION ………………………………………………… 28

CERTIFICATE OF COMPLIANCE ……………………………………  29

# **TABLE OF AUTHORITIES**

## **Cases**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*
522 F.3d 182, 190 (2d Cir. 2008) ……………………………………………   27

*Blum v. Stenson*
465 U.S. 886, 896 n.11 (1984) ……………………………………………   26

*CARCO GROUP, Inc. v. Maconachy*
718 F.3d 72, 79 (2d Cir. 2013) ……………………………………………   3

*Cassese v. Williams*
503 F. App'x 55, 57 (2d Cir. 2012)
cert. denied, 133 S. Ct. 2023 (U.S. 2013) …………………………………   17

*City of Detroit v. Grinnell Corp.*
495 F.2d 448, 455 (2d Cir. 1974) ……………………………………………   23

*City of Providence v. Aeropostale, Inc.*
11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ….   4

*Devlin v. Scardelletti*
536 U.S. 1 (2002) ……………………………………………………   1

*Goldberger v. Integrated Resources, Inc.*
209 F.3d 43, 47 (2d Cir. 2000) ……………………………………………   2, 23

*Green v. Occidental Petroleum Corp.*
541 F.2d 1335, 1341 (9th Cir. 1976) …………………………………………   22

*Halliburton Co. v. Erica P. John Fund, Inc.*
No. 13-317, 2014 WL 2807181 (June 23, 2014) …………………………   22

*Hecht v. United Collection Bureau*
691 F.3d 218, 222 (2d Cir. 2012) ……………………………………………   9

*Hess v. Pawloski*
274 U.S. 352 (1927) ……………………………………………………   17

*In re Agent Orange Product Liability Litigation*
818 F.2d 145, 167–69 (2d Cir.1987) …………………………………………   12

*In re Beacon Assocs. Litig.*
No. 09 Civ. 777(CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013) .   24

*In Re Citigroup Inc. Securities Litigation*
965 F.Supp.2d 369 (2013) …………………………………………… 8, 25, 26

*In re Credit Suisse First Boston Corp. Sec. Litig.*
No. 97 Civ. 4760, 1998 WL 734365, at *12 (S.D.N.Y. Oct. 20, 1998) ……. 20

*In re Global Crossing Access Charge Litig.*
No. 04–1630, slip op. (S.D.N.Y. May 2, 2006) …………………………… 15

*In re Mercury Interactive Corp. Securities Litigation*
618 F.3d 988 (2010) ……………………………………………… 14 - 17

*Koon v. United States*
518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ………………  3

*Mandujano v. Basic Vegetable Products, Inc.*
541 F.2d 832, 836 (9th Cir. 1976) ………………………………………   23

*Mangone v. First USA Bank*
206 F.R.D. 222, 233-34 (S.D. Ill. 2001) ……………………………   11, 12

*McDaniel v. Cnty. of Schenectady*
595 F.3d 411, 416 (2d Cir.2010) ………………………………………… 3, 27

*Mirfasihi v. Fleet Mortgage Corp.*
356 F.3d 781, 786 (7th Cir. 2004) ……………………………………… 12, 13

*Mullane v. Central Hanover Bank & Trust Co.*
339 U.S. 306, 317 (1950) ……………………………………  10, 12, 16, 17

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797, 811-12 & n.3 (1985) ……………………………………   9, 12

*Reiter v. MTA New York City Transit Auth.*
457 F.3d 224, 232 (2d Cir.2006) …………………………………………  26

*Savoie v. Merchs. Bank*
166 F.3d 456, 463 (2d Cir. 1999) …………………………………………  26

*Soberal–Perez v. Heckler*
717 F.2d 36, 43 (2d Cir.1983) …………………………………………. 2

*Union Carbide*
724 F.Supp. at 163 ………………………………………………………. 27

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
396 F.3d 96, 113-14 (2d Cir. 2005) …………………………………… 2, 11

*Weinberger v. Kendrick*
698 F.2d 61, 70 (2d Cir.1982) ………………………………………… 2, 11

*Wuchter v. Pizzutti*
276 U.S. 13, 48 (1928) ……………………………………………………. 17

*Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.*
758 F.2d 86, 90 (3rd Cir.1985) ………………………………………… 12

## Codes, Rules and Other Materials

United States Codes
    15 U.S.C. §78aa    ……………………………………………… 1
    15 U.S.C. §78j(b)   ……………………………………………… 1
    15 U.S.C. §78t(a)   ……………………………………………… 1
    28 U.S.C. §1291     ……………………………………………… 1
    28 U.S.C. §§ 1331 ……………………………………………… 1
    28 U.S.C. §§ 1337 ……………………………………………… 1

Federal Rules of Civil Procedure
    23         ……………………………………………………… 12, 16
    23(c)(2)       ……………………………………………………… 8
    23(c)(2)(B) ……………………………………………… 7, 11, 13
    23(e)          ……………………………………………………… 2, 7
    23(e)(l)        ……………………………………………………… 11
    23 (h)         ……………………………………… 1, 7, 9, 11, 13-15, 17
    54(d)(2)       ……………………………………………………… 13
    Advisory Committee Notes to the 2003 amendments …………… 14, 16

Codes of Federal Regulations 17 C.F.R. §240 …………………………. 1

Securities and Exchange Act of 1934
    10(b)          ……………………………………………… 1, 6, 20
    20(a)          ……………………………………………………… 1, 6

27 ………………………………………………… 1

Securities and Exchange Commission Rule 10b-5 ……………………… 1, 20

Local Rules of Southern District of New York, Rule 6.1 ………………… 16

5 Moore's Federal Practice § 23.124[4]
    Matthew Bender 3d ed.2009 ………………………………………… 14

Best Notice Practicable' in the Twenty–First Century
    2003 UCLA J.L. & Tech. 4 ………………………………………… 12

Fundamental Principles for Class Action Governance
    Alexandra Lahav, 37 IND. L. REV. 65, 118-125 (2003) …………… 9

## I.     JURISDICTIONAL STATEMENT

This securities class action was filed in 2011, alleging violations of section 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) and 78t(a), Securities and Exchange Commission Rule 10b-5, 17 C.F.R. §240.10b-5. The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, 15 U.S.C. §78aa, and Section 27 of the Exchange Act, 15 U.S.C. §78aa. This Court has jurisdiction under 28 U.S.C. §1291. The Court issued a Memorandum Opinion and Order Granting Lead Plaintiff's Motions for Final Approval of Class Action Settlement, Plan of Allocation, and Attorneys' Fees and Expenses on May 9, 2014 (AA475) and entered its Final Order and Judgment on May 14, 2014 (AA512).

Appellant Objector Donald Robert Pierson, a class-member who objected to approval of the settlement (AA399), has standing to appeal a final approval of a class action settlement without the need to formally intervene. *Devlin v. Scardelletti* 536 U.S. 1 (2002). Pierson timely filed his Notice of Appeal on June 6, 2014 (AA537).

## II.     STATEMENT OF ISSUES

*1.* Whether the court erred as a matter of law in approving a Settlement where notice of the Attorneys' Fee Motion was not provided to Class Members as required by Fed. R. Civ. Proc. 23 (h).

1

*2.* Whether the court abused its discretion in awarding attorneys' fees of 33 percent of the total Settlement Fund, where the risks of non-settlement were low, the damages earned for the class were minimal and the lodestar information submitted was presumptively unreasonable.

## III.   STANDARD OF REVIEW

The standard for the adequacy of a settlement notice in a class action under the Due Process Clause or the Federal Rules is measured by reasonableness. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 113-14 (2d Cir. 2005), citing *Soberal–Perez v. Heckler,* 717 F.2d 36, 43 (2d Cir.1983); Fed.R.Civ.P. 23(e). There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir.1982).

Attorneys' fees awards are reviewed for abuse of discretion. *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 47 (2d Cir. 2000). "An abuse of discretion occurs "when (1) the court's decision rests on an error of law (such as application of the wrong legal principle) or clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible

decisions." *CARCO GROUP, Inc. v. Maconachy,* 718 F.3d 72, 79 (2d Cir. 2013), citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 416 (2d Cir.2010).

A district court has broad discretion to determine attorneys' fees, but it abuses that discretion if it makes an error of law. See *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

## IV.    STATEMENT OF THE CASE

Plaintiffs filed a putative class complaint against Aeropostale, Inc. and two of its executives on October 11, 2011, alleging violations of federal securities laws. (AA12) After the district court denied its Motion to Dismiss on March 25, 2012 (AA105), Aeropostale filed an Answer on April 8, 2013.  (AA139) Plaintiffs filed a motion to Certify Class on April 24, 2013 (AA174); the parties filed a stipulation to proceed as a class action on July 17, 2013.

On January 29, 2014, the parties filed their settlement agreement with the motion for preliminary approval of the settlement.  (AA210) The Settlement created a $15 million settlement fund, from which attorneys' fees of 33% of the Settlement (or $4,950,000) plus litigation expenses of $455,506.85 would be paid, with an award to class representative of $11,235.04.  (AA334)

On May 9, Hon. Colleen McMahon issued a Memorandum Opinion and Order Granting Lead Plaintiff's Motion for Final Approval of Class Action

Settlement, Plan of Allocation, and Attorneys' Fees and Expenses (AA475), *City of*

*Providence v. Aeropostale, Inc.*, 11 CIV. 7132 CM GWG, 2014 WL 1883494

(S.D.N.Y. May 9, 2014).  The court approved the settlement and the fees, issuing

its Final Order and Judgment on May 14, 2014. (AA512)  Pierson timely appealed.

(AA537)

## V.    STATEMENT OF FACTS

Aeropostale, Inc. is a retailer of specialty clothing, primarily aimed at girls

and young women aged 7 to 17.  Prior to the 2011, Aeropostale had a history of

making highly accurate financial projections and had achieved success in part by

maintaining control over its proprietary brands by designing, sourcing, marketing

and selling all of its own merchandise in Aeropostale stores or online.  Beginning

in the fall of 2010, and continuing throughout much of 2011, however, the

company stumbled.  Changes in product lines were not well received by the

market, and huge surplus inventories resulted.  The Company hid the problems it

was having from the markets, and when it finally acknowledged its problems its

stock price dropped precipitously.  From March 11, 2011, when its stock closed at

$23.05to August 18, 2011, its stock fell to $10.71, a decline of 53%.

### A. The Litigation

The First Amended Complaint ("FAC" or "Complaint") alleges the

Company experienced serious problems beginning with its back-to-school product

4

lines in the fall of 2010 followed by dismal sales in the 2010 holiday season.  The

failure of the new design philosophy advocated by Co-CEO Mindy Meads resulted

in poor sales and significant inventory buildup. (AA17)

The Complaint alleges that the Company has a sophisticated software

system to monitor sales, inventory and profit margins, which enabled it to know

almost immediately when sales are flat and profit margins decline.  Because of

these sophisticated tracking systems, prior to 2011 the Company had consistently

made highly accurate earnings projections in each quarter.  (AA117-118)

Despite knowing almost immediately that the Company was experiencing

severe problems in late 2010, the Company continued to report favorable earnings

in line with previous results to cover up its dismal sales and other problems in late

2010 and early 2011.  The Complaint alleges the Company knowingly made false

statements to investors, attempting to cover up the serious problems in the

Company, knowing the earnings projections were inaccurate and that the

Company's results would continue to deteriorate for several months because of the

unpopularity of existing product lines, the large accumulation of unsold inventory

and the need to conduct sales at deep discounts to get rid of the excess inventory.

(AA18-20)

The Company eventually acknowledged the serious problems it was facing

and made corrective disclosures on certain occasions in 2011in May and August of

2011.  Because of these corrective disclosures, the Company's stock price declined from $23.05 on March 11, 2011, at the beginning of the class period, to $10.71 at the end of the class period – representing a decline of 53%.  (AA48)  The Complaint alleges class members experienced declines in the value of their stock of as much as $12.34 per share.

Plaintiffs sued in the Southern District of New York on October 11, 2011, alleging Defendants violated the federal securities laws. On January 11, 2012, the Court appointed Lead Plaintiff, approved Plaintiff's selection of Lead Counsel, and granted Lead Plaintiff permission to file an amended complaint.  On February 10, 2012, Lead Plaintiff filed an Amended Complaint. The Complaint alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5 by making misstatements and omissions during the class period (March 11, 2011 through August 18, 2011) regarding the Company's quarterly earnings guidance and inventory management.

Following filing of the Amended Complaint, Defendants moved to dismiss on March 12, 2012.  The court denied that motion on March 25, 2013. (AA37) On April 8, 2013, Defendants filed an Answer to the Complaint. (AA139) On April 24, 2013, Lead Plaintiff moved for an order certifying the Action to proceed as a class action.  (AA174) Shortly discovery commenced, with Defendant producing over one million pages.  (AA371-373)

On July 10, 2013, Lead Plaintiff and Defendants jointly filed a Stipulation and Order Regarding Class Certification, and the court issued its certification order on July 17, 2013.

## B. The Settlement

The parties entered into settlement discussions with the assistance of the Honorable Daniel Weinstein (Ret.) ("Judge Weinstein").  A mediation was held on October 29, 2013, which resulted in the proposed settlement agreement.

The Settlement Agreement provided for the creation of a Settlement Fund of $15 million in cash, which Plaintiff's estimated would entitle class members to average recovery of $0.50 per damaged share, before deduction of Court-approved expenses, such as attorneys' fees and expenses and administrative costs.  (AA185, AA205)

## C. Pierson Objects; the Court Approves the Settlement

Pierson objected on grounds that the notice provided to the Class was inadequate and failed to satisfy the requirements of Fed. Rules Civ. Proc. Fed. R. Civ. P. 23(c)(2)(B), 23(e) and 23(h).  Pierson argued relevant documents including the fee motion were not posted on the settlement website and complained the fee motion was filed only two weeks before the objection deadline.

Pierson argued the fee request was excessive in light of the lack luster settlement and that inadequate lodestar information had been provided. Pierson

noted there was no support for the damages estimates. The information submitted in support of the lodestar was particularly problematic based on claims that the court award fees for document review from $325 to $500 per hour. Pierson pointed to another Southern District case where the court determined the rates for low level document review were inflated. *In Re Citigroup Inc. Securities Litigation*, 965 F.Supp.2d 369 (2013).

On May 9, the district court approved the settlement and overruled the objection, finding it "patently frivolous" and gave Pierson's counsel seven days to show cause why he should not be sanctioned in the amount of costs incurred by Lead Plaintiff in responding to the objection. (AA479)

The court entered its final order approving settlement and judgment on May 14, 2014. (AA512)

Pierson responded to the order to show cause on May 16, 2014. Class counsel filed a response and a motion for attorneys' fees on May 23, 2014. (AA524) Pierson replied on May 30, 2014. (AA528) The judge entered its order closing the case on June 10, 2104. (AA539)

## VI.   ARGUMENT

### A. The district court erred in approving a Settlement where class members were not provided adequate notice.

"Absent class members have a due process right to notice and an opportunity to opt out of class litigation when the action is 'predominantly' for money

8

damages." *Hecht v. United Collection Bureau*, 691 F.3d 218, 222 (2d Cir. 2012),

citing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12 & n.3 (1985).

Adequate notice is essential to the fairness of class action settlements.  Notice

includes providing information to class members.  See, e.g., Alexandra Lahav,

Fundamental Principles for Class Action Governance, 37 IND. L. REV. 65, 118-

125 (2003) (observing that "The first and perhaps most important principle for

class action governance is the disclosure principle.  This principle requires that

material information be disclosed to class members, objectors, and judges.")

Pierson raised two concerns regarding the sufficiency of the notice and related

disclosures.  Pierson argued relevant documents such as the complaint and motion

for attorneys' fees were not available to class members.  This issue is ripe for the

court's review as "the best notice practicable under the circumstances" in today's

internet age includes providing an adequate website and timely posting of relevant

court documents to that website.  Pierson also argued the attorneys' fee motion was

filed only two weeks prior to the deadline to object to the settlement and that notice

of the motion was not directed to class members, in violation of the requirements

of Rule 23(h).  (AA137-138)

> **1.  *Documents necessary to a review of the fairness of the Settlement
>     and Attorneys' fees were not provided to class members.***

Documents relevant to the fairness of the Settlement were not provided to

the class prior to the deadline to object to the settlement.  Pierson objected that

class counsel had not posted (1) the Complaint, (2) the Motion to Approve Class

Action Settlement and Plan of Allocation, (3) the Motion for Attorney Fees and

Payment of litigation expenses, and (4) the Class Counsel's Declaration in Support

of Motion for Attorney Fees and to Approve Class Action Settlement (the

"Gardner Declaration") on the Settlement Website.   (AA421, referring to AA37,

(AA358, 329).  Except for the Complaint, these documents were filed on April 4,

2014.

Pierson objected on April 18, 2014; on April 21, 2014, the motions for

attorneys' fees and for final approval were posted on the settlement website.  See

Reply Declaration of Jonathan Gardner, Filed 05/02/14 (AA424) page 2, ¶ 3,

noting "The motion papers have been posted on the settlement website and Lead

Counsel's website since April 21, 2014."

This corrective action occurred after the deadline for opting out and

objecting.  "While Lead Counsel recognizes that web posting of motion papers is

beneficial, and regrets the oversight that led to them not being posted earlier here,

web posting is an additional convenience for those who have access to the

internet—not a requirement of due process or the PSLRA."  (AA415).

Cases regarding adequacy of notice continue to routinely refer to *Mullane v.*

*Central Hanover Bank & Trust Co*., 339 U.S. 306, 317 (1950) and other cases

decided long before the internet.  Although the principles enunciated in these cases

10

may not have changed, the technology available for providing notice has changed dramatically.

Providing "the best notice practicable" today demands a different approach than that established in the 1950's. Due process today requires documents be provided to class members online. Fed. R. Civ. P. 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(e)(l) requires notice must be provided in a "reasonable manner" i.e., it must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc. v. VISA US.A. Inc*., 396 F.3d 96, 114 (2d Cir. 2005) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982).

Providing a settlement website, with documents necessary to review the course of litigation and terms of a settlement, has become standard in class action settlement administration. This reflects the reality that the internet is the primary research tool and information source.

District courts often fail to embrace the reality of the Internet. In *Mangone v. First USA Bank*, 206 F.R.D. 222, 233-34 (S.D. Ill. 2001) the court held "There is no requirement under due process or the federal rules requiring dissemination of such information over the Internet or the telephone. Rather, all that is required by

11

F.R.C.P. 23 is that Notice be provided to the class by the most practicable means available, which was first class mail." *Mangone* cited cases decided long before the internet existed or became the dominant information source, including *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (The procedure "where a fully descriptive notice is sent by first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process") and *Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3rd Cir.1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both F.R.C.P. 23 and the due process clause"). *Mangone* at 234-235.

The Seventh Circuit: "When individual notice is infeasible, notice by publication in a newspaper of national circulation (here USA Weekend, a magazine that is included in hundreds of Sunday newspapers) is an acceptable substitute." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004), citing Fed.R.Civ.P. 23(c)(2), *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and this court's decision in *In re Agent Orange Product Liability Litigation*, 818 F.2d 145, 167–69 (2d Cir.1987). The court continued, however:

> "But in this age of electronic communications, newspaper notice alone is not always an adequate alternative to individual notice. (See Brian Walters, " 'Best Notice Practicable' in the Twenty–First Century," 2003 UCLA J.L. & Tech. 4, discussing N.D. Cal. Civ. L.R.

12

> 23–2, which requires that notice of securities class actions be posted
> to an online clearinghouse maintained by Stanford Law School.) The
> World Wide Web is an increasingly important method of
> communication, and, of particular pertinence here, an increasingly
> important substitute for newspapers."

*Mirfashi* at 786. Today, "best notice practicable" under Rule 23(c)(2)(B) demands

that settling parties provide a settlement website providing access to documents. It

is an abuse of discretion to ignore the internet and allow settlements to slip into

final approval without giving the class access to information that can be freely and

easily published. Class counsel must embrace their duty to disclose information

and documents. Failing to do so ignores due process in the internet age.

### 2. *Notice of the Attorneys' Fee Motion was not directed to Class Members as required by Fed. R. Civ. Proc. 23 (h)*

Pierson objected that the requirements of Rule 23(h) were not satisfied

because class counsel failed to give timely notice of their fee motion. (AA402)

The plain text of Rule 23(h) requires class counsel "direct" motions for attorneys'

fees to class members:

> (1) A claim for an award must be made by motion under Rule
> 54(d)(2) . . . . at a time the court sets. Notice of the motion must be
> served on all parties and, for motions by class counsel, directed to
> class members in a reasonable manner.
> (2) A class member, or a party from whom payment is sought, may
> object to the motion.

Fed.R.Civ.P. 23(h). The plain text requires notice of motions for attorneys'

fees be directed to class members so they can review the motion prior to the

13

objection deadline. The rule does not allow mere preliminary notice of a forthcoming motion. The two week period here meant nothing because the class had no "notice" of or access to the fee motion; it was not on the settlement website until after the objection deadline.

The Advisory Committee Notes to the 2003 amendments to Rule 23(h) underscore the importance of providing information to class members prior to the deadline to object to the Settlement. Moore's Federal Practice advises "[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request." 5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed.2009). Allowing examination of counsel's fee motion, inquire into the bases for various charges and supporting documentation is essential. As a fiduciary for the class, the district court, should not only examine the fee request but also ensure the class has the opportunity to examine the fee request. The court cannot assume a superior role based on experience or familiarity with class counsel; the district court's role as fiduciary does not displace Rule 23(h) right to review and object to a fee request. Impeding/misapplying Rule 23(h) is an abuse of discretion.

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (2010), found the District Court erred in setting the deadline for filing the fee motion after

14

the deadline to object.  The court noted that following the amendment of Rule

23(h) in 2003, many district courts had made similar mistakes.  The Ninth Circuit

observed that the "schedule set by the district court . . . requiring objections to be

filed before the filing of the fee motion itself and its supporting papers, appears to

be commonly employed by district courts throughout the Ninth Circuit and

elsewhere in the country."  See *In re Mercury Interactive*, 618 F. 3d at 993, citing

cases from several circuits, including the Southern District of New York's decision

in *In re Global Crossing Access Charge Litig.,* No. 04–1630, slip op. (S.D.N.Y.

May 2, 2006) (objections due eight days before motions to support fee).  In

Mercury, the Ninth Circuit held that "the district court abused its discretion when it

erred as a matter of law by misapplying Rule 23(h) in setting the objection

deadline for class members on a date before the deadline for lead counsel to file

their fee motion. The practice borders on a denial of due process because it

deprives objecting class members of a full and fair opportunity to contest class

counsel's fee motion."  *Mercury*, 618 F. 3d at 993.

  After *Mercury Interactive*, several courts have deemed two weeks notice as

sufficient.  But a "filing" deadline without more ignores the reality of internet

access.  Without posting the motion on the settlement website, the class, unless

they have Pacer access, do not have access to the motion.  The Advisory

Committee Notes to the 2003 amendments to Rule 23(h) state "[i]n setting the date

objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors *to examine the motion*." Fed.R.Civ.P. 23, 2003 Advisory Committee Notes (emphasis added). The fee motion here was 29 pages supported by a 337 page declaration by lead counsel Jonathon Gardner. The Advisory Committee Notes explicitly suggest that in appropriate cases courts should permit an "objector discovery relevant to the objections" – which is not possible when the fee motion is filed only two weeks prior to the deadline to object. Id. ¶ 69.

The notice process in the preliminary approval order (AA315) failed to comply with Southern District local rules. See, e.g., *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 995 fn. 2 (2010). The fee motion was filed two weeks prior to the objection deadline but there was no "service" on the class. See Local Rule 6.1. Although mail service may not have been feasible, it was entirely reasonable and practicable to post the motion on the settlement website. Doing this could be deemed substituted service and effective in accomplishing notice; filing the motion through the court's ECF system neither provides notice to the class nor effects service. In evaluating the adequacy of notice regarding the attorneys' fees, the principles enunciated in *Mullane v. Hanover* warrant review:

But when notice is a person's due, process which is a mere gesture is
not due process. The means employed must be such as one desirous of
actually informing the absentee might reasonably adopt to accomplish
it. The reasonableness and hence the constitutional validity of any
chosen method may be defended on the ground that it is in itself
reasonably certain to inform those affected, compare *Hess v.
Pawloski*, 274 U.S. 352 (1927), with **658 *Wuchter v. Pizzutti*, 276
U.S. 13, 48 (1928), or, where conditions do not reasonably permit
such notice, that the form chosen is not substantially less likely to
bring home notice than other of the feasible and customary
substitutes."

*Mullane*, 339 U.S. at 314-315 (emphasis added). It would have been so easy to

provide reasonable notice to the class on a settlement website and there's no

excuse for not doing so.  Standard notice procedures in class action litigation have

become merely symbolic; filing motions with the court but not providing them to

class showed class counsel was not truly "desirous of informing the absentee" as

required under *Mullane*.  The excessive fee issues here make this even more

important.

The protocol here did not satisfy Rule 23(h) and raises due process concerns.

The Ninth Circuit observed: "misapplying Rule 23(h) . . .[in improperly setting the

fee deadline]  borders on a denial of due process because it deprives objecting class

members of a full and fair opportunity to contest class counsel's fee motion."  *In re

Mercury Interactive,* 618 F. 3d at 993.

In *Cassese v. Williams*, 503 F. App'x 55, 57 (2d Cir. 2012) cert. denied, 133

S. Ct. 2023 (U.S. 2013), commenting on *Mercury Interactive*, this court declined to

17

make a determination as to whether fee motions must be filed in advance of the deadline to file objections, observing "We need not decide whether requiring objections to be filed in advance of a fee motion might raise due process concerns in some cases. "  Regarding the specific facts of that case, this court noted "We conclude only that notice of class counsel's fee request was reasonable here under the circumstances and sufficient to satisfy due process."  This court should, however, more proactively protect the due process rights of absent class members – this case provides such an opportunity.

If this court again chooses to defer on due process avoidance in the country's most active securities venue, driven by billionaire class counsel firms, then it's time to publish this endorsement so the Supreme Court can resolve this conflict.

### B. The award of attorneys' fees of 33% of the Settlement was excessive, and premised on an insufficient factual findings.

The district court acknowledged the fees were "at the high end of the range of other percentage fee awards within the Second Circuit in comparable settlements".  (AA494)  The court approved the fee award with no evidence to support class counsel's damages analysis or and did not request or review billing records to support class counsels' lodestar.   Pierson argued the damages estimates were low (fifth *Grinnell* factor), and that the lodestar information was inflated (relevant to the first Grinnell factor).

**1.** ***The court erred in assessing the adequacy of the settlement and accordingly overvalued the benefits obtained for the class.***

"The fee award should reflect the benefits conferred on the class by Counsel's efforts. The settlement compensation of $0.50 per share offered to Class Members is extremely low in comparison to the damages of as much as $12.34 per share alleged by Plaintiffs." (AA403)

The district court accepted with no examination, class counsel's statement "The Settlement Amount of $15 million is an excellent result for the Class." (AA426) The court observed:

> According to analyses prepared by Lead Plaintiff's consulting damages expert, using certain assumptions and modeling, the maximum damages recoverable by the Class would be approximately $163 million (assuming 100% recovery for all four alleged corrective disclosure dates), but the most realistic maximum provable damages would likely be as low as $72 million. Gardner Decl. ¶8. The $15 million Settlement therefore represents a recovery in the range of approximately 9 .2% to 21 % of estimated damages. This recovery, particularly in view of the risks and uncertainties discussed above, falls well within the range of possible approval and courts have generally approved other settlements in PSLRA cases that recover a comparable or smaller percentage of estimated damages.

Memorandum and Opinion, AA045, citing Gardner Decl. ¶8. [1]

---

[1] The district court essentially copied Gardener's declaration verbatim: "Lead Plaintiff's expert has estimated, based on certain assumptions and modeling, that the Class sustained maximum damages in the range of approximately $72 million (if 100% of the two alleged corrective disclosures pertaining only to 1Q2011 are considered)4 to $163 million (if 100% of the four alleged corrective disclosures pertaining to both 1Q2011 and 2Q2011 are considered). Measured

19

Gardner's brief, self-serving, facile summary of his own expert's analysis was the sole foundation of the court's approval of a 6% recovery. Gardener's "estimated damages" are substantiated by nothing more than results "based on certain assumptions and modeling." (AA490) There is no other supporting information and there is zero evidence to substantiate the low recovery. Rather than attaching an expert's report detailing this analysis, Gardner merely attached a Nera report entitled "Recent Trends in Securities Class Action Litigation: 2013 Full-Year Review Large settlements get larger; small settlements get smaller." The Nera report substantiates Gardner's assertions that the settlement is an excellent result *in comparison to other class action lawsuits*. Gardner stated:

> It is well-above the $9.1 million median settlement amount of reported securities cases in 2013, and greater than the median reported settlement amounts since the passage of the PSLRA, which have ranged from $3.7 million in 1996 to $9.1 million in 2013 (with a peak of $12.3 million in 2012).

There is no evidentiary support for the district court's finding that this was a reasonable settlement justifying an exceptional fee.

*In re Credit Suisse First Boston Corp. Sec. Litig.,* No. 97 Civ. 4760, 1998 WL 734365, at *12 (S.D.N.Y. Oct. 20, 1998)("Out of pocket damages are the typical measure of damages awarded in securities fraud cases brought under §

---

against this yardstick, the Settlement will compensate Class Members for approximately 9.2% to 21% of their estimated maximum losses—a substantial recovery in light of the countervailing legal arguments and litigation risks."

10(b) and Rule 10b-5. They are measured as 'the difference between the purchase price and the true value of the stock.'"  The out-of-pocket loss is measured by the difference between the price at which the stock sold and the price at which the stock would have sold absent the artificial inflation in the stock price caused by the alleged misrepresentations or omissions.")

Plaintiffs alleged 10b-5 violations and claimed damages based on the difference between the price paid for the securities and the value of the securities determined as of the time of the discovery of the fraud.  (AA493)  According to complaint, Aeropostale's stock price dropped $12.34 per share during the class period, from $23.05 at the close of business on March 11, 2011 to $10.71 on August.

Pierson pointed out the disparity between damages of $12.34 per share and a settlement of $0.50.  Class counsel reacted "The fact that Mr. Turkish assumed his was a proper calculation of damages demonstrates the baselessness of the objection."  (AA419)

There's no evidence of economic models or event studies indicating the alleged price drop was not wholly a result of the misconduct.  There are no economic or industry factors to suggest detract from the effect of the Aeropostale fraud.

21

Courts have developed a wide variety of approaches to estimating damages. First advocated by Judge Joseph Sneed's concurring opinion *In Green v. Occidental Petroleum Corp.,* 541 F.2d 1335, 1341 (9th Cir. 1976), a comparison of a stock's "price line" with its "value line" (the line reflecting the true value of the stock). Other approaches include "true value" by an "event study" to determine true value. This approach assumes the price and value of the security move together except when disclosures of company-specific information influence the price of the stock. The damages expert looks at the days when the stock price moves differently than anticipated solely based upon market and industry factors, so called days of "abnormal returns." The damages expert determines whether those abnormal returns are due to fraud or non-fraud related factors. Using event studies were a focus in *Halliburton Co. v. Erica P. John Fund, Inc.,* No. 13-317, 2014 WL 2807181 (June 23, 2014). The Supreme Court's refers to event studies as providing one method to show an alleged misrepresentation has little or no price impact. Damages experts were a defense tool but now are used by class counsel to justify compromises settlements for pennies on the dollar. Here there was no expert evidence.

Although courts are not required to employ any specific method in evaluating a settlement, more than a conclusory summary of the expert's evaluation is required. "The fact that a proposed settlement may only amount to a

22

fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 (2d Cir. 1974) abrogated by *Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000).

During the class period the overall stock market declined somewhat, but the general market decline was only a fraction of the Aeropostale drop.  Plaintiff's expert report was never offered as evidence. A brief <u>one sentence</u> summary of an experts' analysis is not adequate.

The district court should "set forth on the record a reasoned response thereto. Such findings of fact and conclusions of law as may be necessary to support the response must also appear on the record." *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 836 (9th Cir. 1976).  Here Pierson's arguments were brushed aside as "frivolous." (AA479) Even if an objection is found to be without substance, "the trial court should set forth on the record its reasons for so considering the objection."  Id.

Pierson argued the attorneys' fee award should be evaluated weighed against the poor result.  The district court rewarded class counsel handsomely and excessively for a paltry and unsubstantiated recovery.

### 2. *The court erred in approving an attorney fee award where counsel submitted inflated and presumptively unreasonable hourly rates for document review*

23

The court used a percentage of the fund approach, noting that the "trend among district courts in the Second Circuit is to award fees using the percentage method," citing its earlier decision in *In re Beacon Assocs. Litig.,* No. 09 Civ. 777(CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013) ("the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases, reserving the traditional 'lodestar' calculation as a method of testing the fairness of a proposed settlement"). (AA495) The court acknowledged that "to ensure the reasonableness of a fee awarded under the percentage method, the Second Circuit encourages a crosscheck against counsel's lodestar."  AA475, citing *Beacon*, 2013 WL 2450960, at *15.  "Under the lodestar method, the court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work."  (AA496)

"Performing the lodestar cross-check here confirms that the fee requested by Lead Counsel is reasonable and should be approved."  (AA496)  But the record could not enable such a cross-check.

Labaton claimed a lodestar of $6,460,996.50 for 12,852.2 hours; average billing rate, $502.00 per hour.  Robbins Geller's lodestar was $350,713.75 for 701.50 hours; average billing rate of  $499.00. Barrack Rodos claimed $235,435.00 for 565.90 hours for an average of $416.00.  (Exhibit 7 to Declaration of Jonathan Gardner in Support re: Motion for Attorney Fees and Payment of Litigation Expenses (AA329)

There are no detailed billing records or any information regarding how the hours were expended.  Plaintiffs acknowledged much of the work was devoted to document review and Gardner's declaration describes the document review process which included assembling a group of document review attorneys, and reviewing over a million pages of documents produced in discovery. (AA370-373)  Thirteen staff attorneys with billing rates between $335 and $410 per hour (some with total billing of over $300,000.00.) and Pierson argued the document review doubt conducted by these low paid contract or staff attorneys was being overcharged to the class.

Just as in *In Re Citigroup Inc. Securities Litigation*, 965 F.Supp.2d 369 (2013) where an objector took issue with the attorneys' fees, arguing that excessive fees were being claimed for low-level document review work, which the objector noted were typically paid at rates between $20.00 and $45.00 per hour.  The objector proved so-called staff attorneys were contract attorneys, which further

25

limited the overhead plaintiffs could reasonable add to their rates.  Judge Sidney H. Stein determined that a blended hourly rate of $200.00 was appropriate and reduced the lodestar by more than $12M for 45,300 hours.  *In Re Citigroup*, 965 F.Supp.2d at 398-399.

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with" prevailing market rates" and that they reflect rates a paying client would be willing to pay. See *Savoie v. Merchs. Bank*, 166 F.3d 456, 463 (2d Cir. 1999).

Consistent with *In re Citicorp* – and the general perception that contract attorney billing is routinely inflated in class action fee requests, Pierson requested: "At a minimum the attorneys should be required to produce detailed billing records and rates for each attorney, and information supporting the rate at which each attorney's services are being billed."  (AA404)

"The court must determine "the rate a paying client would be willing to pay."  "The lodestar figure should be based on market rates 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *In Re Citigroup Inc.*, 965 F.Supp.2d at 393, quoting *Reiter v. MTA New York City Transit Auth.,* 457 F.3d 224, 232 (2d Cir.2006) and *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984)). See also *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522

F.3d 182, 190 (2d Cir. 2008) and *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 421-22 (2d Cir. 2010) (discussing use of *Arbor Hill* based lodestar calculation as part of cross check on common fund percentage award).   No such assessment was made here.

### 3. *In light of inadequate damages assessment and misleading and inadequate lodestar information, the court abused its discretion in awarding attorneys' fees of 33 1/3 percent of the total Settlement Fund.*

The district court and class counsel acknowledged the award is high in comparison to other securities litigation cases. To assess the reasonableness, courts look to the factors enunciated in Grinnell, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexies of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Union Carbide*, 724 F.Supp. at 163 (summarizing Grinnell opinions).

Consideration of Factor 1 is hampered by the misleading and inflated information submitted by class counsel and cannot support a high fee award where the evidence is insufficient if not misleading.  Under Factor 5, the requested fee in relation to the settlement does not weigh in favor of an excessive fee award; this was not an exceptional result.  The court erred in approving an exceptional fee with no evidence supporting class counsel's damages assessment.  The district court

27

failed to acknowledge the lack of evidence to support of the lodestars or settlement valuation.

## VII.  CONCLUSION

Plaintiffs failed to substantiate their lodestar or their damages estimates. They also failed to direct notice of their attorneys' fee motion to the class, or to provide class members the documents necessary to review the proposed settlement to determine its fairness.   The court's review of the adequacy of notice and sufficiency of information cannot be merely symbolic.  The district court failed to require information essential to the review of the fairness of this Settlement.  The judgment approving the settlement should be vacated and remanded for the district court to make factual findings regarding notice, damages and attorney billing.


Respectfully submitted,


By: /s/ Joseph Darrell Palmer
    Joseph Darrell Palmer
Attorney for Appellant Donald Robert Pierson II

## RULE 32(a)(7)(C) CERTIFICATE

The undersigned counsel certified that Appellant's Opening Brief uses Times New Roman typeface, 14-point, and that the text of the brief comprises of 6514 words according to the word count provided by Microsoft Word 2010 word processing software.


_____/s/ Joseph Darrell Palmer_____
Joseph Darrell Palmer
Attorney for Appellant Donald Robert Pierson II